## Densil J. Ford *v.* The Township of Roulet, Appellant.

*Bridges—Negligence—Question for jury.*

A township is under obligation to keep its bridges in a safe condition for travel.

Plaintiff was injured by the breaking down of a bridge while he was crossing it.   The questions of notice and knowledge of the unsafe condition of the bridge and defendant's negligence in that respect and in an attempt to repair, involving every material fact in the case, being in dispute, the question of defendant's negligence was properly left to the jury and binding instructions for defendant refused

Argued Feb. 15, 1899.  Appeal, No. 2, Feb. T., 1899, by defendant, from judgment of C. P. Potter Co., Dec. T., 1896, No. 260, on verdict for plaintiff.  Before Rice, P. J., Beaver, Orlady, Smith, W. W. Porter, W. D. Porter and Beeber, JJ.  Affirmed.  Opinion by Beaver, J.

Trespass.  Before Olmsted, P. J.

It appears from the evidence that the action was brought to recover damages alleged to have been sustained by plaintiff by reason of a bridge giving way over which he, with others, was crossing in the township of Roulet in Potter county.  At the time of the accident plaintiff, with some twenty others, crossed the bridge in a lumber wagon on which was a hay rack for a picnic ride.  While crossing the bridge the upper girder went down just as the horses got off the bridge on the opposite side from where they started to cross, and caused the wagon to tip so that the plaintiff, with others, was thrown into the water. The bridge had been standing for six or seven years, and had been repaired by a mechanic the day before the accident.  The mechanic testified that he remedied all apparent defects, carefully tested the timber for any hidden defects, and left the bridge in a sound and serviceable condition.  The plaintiff introduced evidence tending to show that the stringer was rotten, and that the defendant's repairs of the bridge timbers were negligently done.  Defendant asked for binding instructions which were refused by the court.

Verdict and judgment for plaintiff for $400.  Defendant appealed.

*Error assigned* was to answer to plaintiff's ninth point, which point and answer were as follows : " That, under the pleadings and evidence in this case, the verdict must be for the defendant.  *Answer :* We cannot affirm this point.  It in effect asks the court to withdraw the case from the jury.  We think there are some questions of fact that are for the jury, and which we have tried to describe to some extent in answer to the points, and shall further do in our general charge."

*J. N. Peck,* of *Peck & Stone,* and *W. I. Lewis,* of *Larrabee & Lewis,* with them *E. Mullin* and *A. R. Moore,* for appellant.

*John Ormerod* and *H. C. Dornan*, with them *S. W. Smith*, for appellee.

OPINION BY BEAVER, J., March 23, 1899 :

The plaintiff suffered a personal injury by being thrown from a wagon driven across a bridge in a public highway which spanned a stream, called in the testimony a river—presumably the Allegheny or one of its tributaries.  He, in common with others, was precipitated from the bridge to the bed of the stream, and received, as he alleged, an injury which caused immediate suffering which affected his earning capacity and threatened to be permanent.

That the defendant was under legal obligation to maintain the bridge is not denied, and the only question raised by the single assignment of error is whether or not there was such evidence of negligence on the part of the defendant as should be submitted to a jury.

The main timbers of the bridge were hemlock, and known to be so.  This is not denied.  The life of hemlock timber, exposed as the timbers in this bridge were, is, according to the testimony of the plaintiff, six or eight years; according to the defendant's testimony, as much as twelve years.  The timbers in this bridge were seven years old.  If the plaintiff's testimony is correct, this fact of itself tended to put the defendants on inquiry as to the condition of the bridge timbers.  Actual notice of some defect and breaking down was brought to the supervisors, and one of them, his son and a carpenter, undertook to repair the bridge.  The accident happened within a short time after the repairs were made.  At least two of the witnesses of the plaintiff testified that the stringer which was broken, and the breaking of which caused the accident, was so thoroughly decayed as to be easily observable.  One of the witnesses, who was at the scene of the accident about half an hour after it occurred, stated that the stringer was broken ; that it looked to him as though it was rotten ; " It looked as though it was rotten all the way through—that is, no bright part to it ; about an inch and a half or two inches on the out edge that was hard ; not all the way round."  Another witness testifies to practically the same thing.  The defendant alleges that in repairing the bridge the main timber or stringer which broke at the time

of the accident was examined and tested by pounding upon it, and gave no evidence under this test of being decayed. The plaintiff alleges, however, that the test used to determine the condition of the timber was not sufficient, and that it should have been tested by boring.

The bridge in question was a simple truss bridge, the truss consisting of two parallel chords connected by braces, held in their place by iron rods which passed through the chords. The main stringer of the bridge constituted the lower chord. As already intimated, the cause of the accident was the breaking of the stringer which constituted the lower chord of the truss ; but what caused the stringer to break? The plaintiff alleged that its decayed condition was in itself sufficient cause. The defendant, however, contended that the bridge, having been repaired the day before the accident, could not have given way without some active and unusual cause, and alleged that one of the braces connecting the two chords of the truss was displaced evidently by the vibration of the bridge caused by rapid driving. The plaintiff, on the contrary, showed, by the testimony of the driver of the wagon from which the plaintiff was thrown, that he drove his team at a walk, until finding the bridge was giving way, he attempted to hurry the horses, without apparent success. If the main stringer of the bridge was in the condition in which the plaintiff alleges it to have been, that would of itself account for the failure of the truss to maintain the load upon it.

Every material fact in the case seems to have been disputed, and the diversities in the testimony relating to the fundamental facts show very clearly that the court could not have affirmed the defendant's ninth point, without serious error. The facts were undoubtedly for the jury, and were fairly submitted for its consideration. The law of the case is well settled, and no exception is taken to its presentation by the court below. No discussion in regard to it is, therefore, necessary.

Judgment affirmed.